**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NATHAN KATZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>RISK MANAGEMENT ALTERNATIVES, INC.'<br><br>Defendant. | ) | 02 CV 3977 (DLI)(CLP) |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Lawrence Katz (0062)
KATZ & KLEINMAN PLLC
Attorney for Plaintiff
626 EAB Plaza
Uniondale, New York 11556
(516) 522-2621

Date of Service: December 8, 2004

ORIGINAL

## TABLE OF CONTENTS

I. THE FDCPA WAS BROADLY DRAFTED TO ELIMINATE ALL FORMS OF COLLECTION ABUSE Page 1

II. STANDARD OF REVIEW FOR CLASS CERTIFICATION Page 2

III. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

A. Rule 23(a)(1) – Numerosity Page 3

B. Rule 23(a)(2) – Commonality Page 4

C. Rule 23(a)(3) – Typicality Page 6

D. Rule 23(a)(4) -- Adequacy of Representation Page 7

E. Rule 23(b)(3): Predominance/Superiority Page 8

1. Common Questions of Law or Fact Predominate Page 8

2. A Class Action is Superior to Other Available Methods to Resolve this Controversy Page 9

IV. CONCLUSION Page 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATHAN KATZ on behalf of himself and all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | 02 CV 3977(DLI)(CLP) |
| RISK MANAGEMENT ALTERNATIVES, INC., | ) | **CLASS ACTION** |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**DEFENDANT HAS VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**

Defendant as alleged in the complaint has violated the FDCPA. (Attached as Exhibit A is a copy of the complaint). In doing so, Defendant has gone far beyond a mere singular violation of the FDCPA by using form letters that do not comply with the requirements of the Act. The letter to Plaintiff and other New York consumers fail to convey to the consumer the amount that is owed in violation of §1692g of the FDCPA.

## I. THE FDCPA WAS BROADLY DRAFTED TO ELIMINATE ALL FORMS OF COLLECTION ABUSE

One of the express purposes of the FDCPA is "to eliminate abusive practices by debt collectors."[1] The FDCPA is a broadly drafted act designed to protect consumers from abusive, deceptive and unfair debt collection practices.[2] The Second Circuit has held that "[t]he basic

---

[1] 15 U.S.C. § 1692(e).

[2] 15 U.S.C. § 1692.

purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."[3]

## II. STANDARD OF REVIEW FOR CLASS CERTIFICATION

In determining whether a class will be certified under Rule 23, the merits of the case are not examined and the substantive allegations of the complaint must be accepted as true.[4] Moreover, "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions."[5] Any doubts regarding the propriety of certification should be resolved "in favor of allowing the class action," so that class actions remain effective vehicles for deterring wrongdoing on a large scale.[6]

Congress recognized the importance of class actions in protecting consumers from debt collectors by expressly authorizing class action remedies under the FDCPA.[7] Consequently, the courts have certified numerous FDCPA class actions.[8] Under Federal Rule of Civil Procedure 23, a class should be certified when the Plaintiff meets all four requirements of Rule 23(a) and one of the Requirements of Rule 23(b). For the reasons discussed below, the requirements of Rule 23

---

[3] *Clomon v. Jackson,* 988 F.2d 1314, 1318.

[4] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re Energy Systems Equipment Leasing Securities Litigation*, 642 F. Supp. 718, 724 (E.D.N.Y. 1986).

[5] *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975).

[6] *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)*; accord, In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732-33 (N.D.Ill. 1977).

[7] 15 U.S.C. §§ 1692k(a) and (b).

[8] *See, e.g., Weber v. Goodman,* 9 F.Supp.2d 163 (E.D.N.Y. 1998) (FDCPA class certified involving collection activities); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996) (class certified regarding harassing and abusive debt collection letters).

are satisfied in this case.

## III. THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A. Rule 23(a)(1) -- Numerosity

The first requirement of Rule 23(a) is that the class members are so numerous that joinder is not practicable. "Impracticability exists where individual adjudication would take an extended period of time and joinder of all the parties would be expensive, time consuming and drastically increase the legal expenses for all the parties."[9] The Second Circuit presumes numerosity at a level of 40 members.[10] "When the class is large, numbers alone are dispositive . . . ."[11] Where there are approximately 40 class members, joinder is usually impracticable, and where the class numbers in the hundreds joinder is clearly impracticable.[12]

It is not necessary that the precise number of class members be known. A class action may proceed upon estimates as to the size of the proposed class and the court is entitled to make

---

[9] *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1990).

[10] *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *cert. denied*, 115 S.Ct. 2277 (1995), *citing* I *Newberg on Class Actions* (2d ed. 1985) § 3.05; *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

[11] *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986)).

[12] *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (stating that "forty investors have been said to represent a sufficiently large group" for class certification); *Town of New Castle v. Yonkers Contracting Company, Inc.*, 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) (potential class of 36 members satisfied numerosity requirement); *United States ex rel. Walker v. Mancusi*, 338 F.Supp. 311, 315-16 (W.D.N.Y. 1971), *aff'd*, 467 F.2d 51 (2d Cir. 1972) (proposed class of 38 prison inmates considered sufficient to satisfy numerosity requirement); *Fidelis Corporation v. Litton Industries, Inc.*, 293 F.Supp. 164, 170 (S.D.N.Y. 1968) (35-70 potential plaintiffs sufficient to satisfy numerosity requirement).

common sense assumptions in order to support a finding of numerosity.[13] A common sense approach is particularly appropriate in FDCPA cases like this one, where the claims at issue arise from the defendant's use of a form debt collection letter.[14] In this case, defendant has admitted within its responses to the interrogatories that there are over 900,000 members within the putative class. ( See responses attached hereto as Exhibit B.)

**B. Rule 23(a)(2) -- Commonality**

Federal Rule of Civil Procedure 23(a)(2) requires that there be either a common question of law or fact.[15] "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that all questions of law or fact raised be common."[16] So long as at least one issue is common to all class members, a class should be certified.[17] Where a question of law involves "standardized conduct of the Defendant ... [to the persons effected], a

---

13 *Keele*, 1996 U.S. Dist. LEXIS 3253, *8. *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).

14 *Deflumer v. Overton,* 176 F.R.D. 55, 58 (N.D.N.Y. 1997); See also *Peters v. AT&T*, 179 F.R.D. 564, 567-8 (N.D.Ill. 1998) ("Based on these facts it is reasonable to infer that many individuals received the form collection letter and that joinder of all the individuals would be impracticable."); *Miller v. Wexler & Wexler,* No. 97 C 6593, 1998 U.S. Dist. LEXIS 1382, *8 (N.D.Ill. Feb. 6, 1998) ("We believe that it is appropriate to assume that the number of potential class members satisfies that numerosity requirement where, as here, the defendants allegedly use preprinted, standardized forms in collecting debts...").

15 *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 290-91 (2d Cir. 1990).

16 *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13, 18 (W.D.N.Y. 1995), *citing Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

17 *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F. 2d 150, 153-54 (2d Cir. 1983) (common question of free speech overrode individual questions concerning each class member); *Spencer v. Central States, Southeast and Southwest Areas Pension Fund*, 778 F.Supp. 985, 989 n. 2 (N.D.Ill. 1991) (*citing Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D.Ill. 1986)).

common nucleus of operative fact is typically presented and the commonality requirement … is usually met."[18] Here, the overarching question common to all of the potential class members is whether Defendant's mechanically generated form letters violate the FDCPA.

The only individual issues are 1) the identification of the consumers who received the letters, a matter capable of ministerial determination from the Defendant's records; and 2) the Defendant's net worth. Both are questions readily answerable from Defendant's own files and do not present an obstacle to class certification.[19] Moreover, since the case is brought for statutory damages, there are no questions, which require individual proof of damages.

Another reason the commonality element is met is that the Defendant treated none of the proposed class members as individuals. Defendant.'s collection activities, like those of any collection firm, are systematized, and Defendnat necessarily acts indiscriminately in its treatment of the consumers from whom it attempts to collect debts by means of collection letters like the letter attached to the complaint. Plainitff's claim is that an entire class was victimized by this common course of deceptive and illegal conduct.

Finally, of paramount importance is that in this case, there are no issues of reliance or causation. The FDCPA is violated if the "least sophisticated consumer" would be misled by the Defendant's conduct and does not require proof that anyone was in fact misled. [20] Under these

---

[18] *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D.Ill. 1995) (*citing Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984)).

[19] *Heastie v. Community Bank,* 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated and questions of injury or damages could be determined by reviewing and comparing contract between the parties).

circumstances, the commonality element is met.

C. **Rule 23(a)(3) -- Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class..."[21] Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."[22] " When the same 'unlawful conduct was directed at both the named Plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'"[23] Moreover, typicality may be satisfied even if there are factual distinctions between the claims of the named Plaintiff and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.[24]

Because commonality and typicality are closely related, a finding of one often results in a finding of the other. In the instant case, typicality is inherent in the claims asserted. Each of the class members received a virtually identical form collection letter under the same circumstances

---

[20] *Clomon v. Jackson*, 988 F.2D 1314, 1318 (2d Cir. 1993).

[21] Fed. R. Civ. P. 23(a)(3).

[22] *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), *citing In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

[23] *Savino v. Computer Credit, Inc.* 173 F.R.D. 346, 352-53 (E.D.N.Y. 1997), *quoting* I *Newberg on Class Actions* § 3.13; *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456-457 (E.D.N.Y. 1996).

[24] *United States v. Davis*, 756 F. Supp. 1162, 1169 (E.D.Wis. 1991)("Typicality ... does not require the named plaintiff to be in the identical situation as every member of the class."), *rev'd on other grounds*, 961 F.2d 603 (7th Cir. 1992).

as Plaintiff. All class members' claims arise from the same practices of the Defendant that gave rise to the named Plaintiff's claims. The content of these letters are, as seen through the eyes of the "least sophisticated consumer," an objective standard, factually identical with respect to the members of the class. Therefore, the typicality requirement has been met.

**D. <u>Rule 23(a)(4) -- Adequacy of Representation</u>**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." That protection is evaluated based on two factors: (a) the Plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the Plaintiff must not have interests antagonistic to those of the class.[25]

Generally, there is a presumption of competence for all members of the bar in good standing unless evidence to the contrary is adduced.[26] Undersigned counsels are active practitioners whose experience, diligence, and commitment to this litigation will more than adequately protect the interests of the class.

As to the named plaintiffs, courts usually look simply to whether the representative's interests are in any way antagonistic to or in conflict with those of the class members.[27] Such conflict must involve the subject matter of the suit and may not be minor or collateral.[28]

---

[25] *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 78 F.3d 764, 778 (2d Cir. 1996); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1991); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1413 (E.D.N.Y. 1989) *aff'd*, 907 F.2d 1295 (2d Cir. 1990); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993).

[26] *Dolgow v. Anderson,* 43 F.R.D. 472, 496 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970); *Hertz v. Canrad Precision Industries, Inc.*, 1970 WL 236, *1 (S.D.N.Y. 1970); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bktcy Ct., E.D.N.Y. 1986).

[27] *Fowler v. Birmingham New Company*, 608 F.2d 1055, 1058-1059 (5th Cir. 1979).

Furthermore, such conflict must be real and not speculative.[29] There is no conflict or antagonism whatsoever between Plaintiff and the class members. Here, both Plaintiff and the class members seek money damages as the result of Defendant's deceptive practices. Given the identical claims of Plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named Plaintiff and those of the class, perceived or actual.

### E. Rule 23(b)(3): Predominance/Superiority

There are two components to certification of a class under Rule 23(b)(3): that common questions predominate over individual questions and that a class action is the superior method of adjudicating the claims of the parties. Here, both requirements are clearly met.

#### 1. *Common Questions of Law or Fact Predominate*

Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.[30] The Second Circuit has held that this criterion is met when there is a common factual link between all the class members and the defendant for which the law provides a remedy.[31] The commonality requirement of Rule 23(a)(2)

---

[28] *Berman v. Narragansett Racing Association, Inc.*, 414 F.2d 311, 317 (1st Cir. 1969), *cert. denied,* 369 U.S. 1037 (1970); *Vernon J. Rockler and Company v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 342 (D.Minn. 1971); *Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir. 1975).

[29] *Robertson v. National Basketball Association*, 389 F.Supp. 867, 899 (S.D.N.Y. 1975).

[30] *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D.Ohio 1987).

and the predominance requirement of Rule 23(b)(3) are closely related and a finding of one will generally satisfy the other.[32]

In this case, the common nucleus of operative facts is that the Defendant sent form letters to all the class members. The content of the letters gives rise to the allegations made by Plaintiffs. The dispositive issues – indeed, the only issues – are whether Defendant violated the rights of the Plaintiff and the class members by sending the letters.

The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for certification and resolution as a class because the document is the crux of the case.[33] This is true even if the class members' damages may vary.[34] The fact that class members' damages do not vary in this case makes it an even stronger candidate for certification. Therefore, the instant case, which concerns a standard form letter, is appropriate for class treatment.

### 2. *A Class Action is Superior to Other Available Methods to Resolve this Controversy*

The primary focus in determining whether the class action is the superior method for resolving the controversy presented is on efficiency.[35] Class actions are an efficient and

---

[31] *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F.2d 150, 153-54 (2d Cir. 1983) (common question of free speech overrode individual questions concerning each class member); *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 335 (N.D.Ill. 1974).

[32] *See Heastie*, 125 F.R.D. at 674.

[33] *D'Alauro v. GC Services Limited Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996) (class certified regarding harassing and abusive debt collection letters).

[34] *Adames v. Mitsubishi Bank, LTD*, 133 F.R.D. 82, 90 (E.D.N.Y. 1989); *D'Alauro v. GC Services Limited Partnership*, 168 F.R.D. at 456.

consistent means of determining the legality of a form document challenged by all class members.[36] The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, efficiency, and economy.[37]

In so doing, a court must consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."[38] Only by maintaining this litigation as a class action will such individuals receive the protections contemplated by law; accordingly, the failure to certify a class will result in a failure of justice.[39]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.[40]

---

[35] *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); *Eovaldi v. First Nat. Bank of Chicago,* 57 F.R.D. 545, 547 (N.D.Ill. 1972).

[36] *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992).

[37] *See Id.* at 189; *D'Alauro v. GC Services Limited Partnership,* 168 F.R.D. at 458.

[38] *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974).

[39] *See Villareal v. Snow*, 1996 WL 28254, *6 (N.D. Ill. 1996) ("[m]ost of the proposed class members are likely to be individual consumers who are unaware of their rights under the FDCPA. Class actions in such cases are favored because even if aware of their rights, class members may lack the initiative to bring suits individually. . .")

[40] *In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D.Ill. 1977)(citations omitted).

Moreover, as the FDCPA's statutory scheme makes apparent, Congress specifically envisioned the class action as a principal enforcement mechanism for the FDCPA.[41]

Finally, no significant management problems are anticipated. Plaintiff's claim, presenting a straightforward question concerning the legality of a printed form and standardized practice, is significantly simpler than many other claims that are routinely certified as class actions, such as securities and price-fixing cases.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court certify this case as a class action and certify a class as follows:

> A class consisting of all persons who Defendant's records reflect were sent a collection letter which stated (a) "If the above account has been paid, please disregard this notice"; and (b) the collection letter was sent to a consumer; and (c) the collection letter was not returned by the postal service as undelivered.

Dated: New York, New York
December 8, 2004

Respectfully Submitted,

Lawrence Katz

**Attorneys for Plaintiff**

Lawrence Katz (LK-0062)
Abraham Kleinman (AK-6300)
Attorney at Law
626 EAB Plaza
Uniondale, New York 11556-0626
(516) 522-2621

---

41 *See* 15 U.S.C. § 1692(k)(a) and (b).

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NATHAN KATZ,
on behalf of himself and all others
similarly situated,

Plaintiff,

-against-

RISK MANAGEMENT ALTERNATIVES, INC.

Defendant.

---

CV 02 3977

02 Civ.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 1 2 2002 ★
BROOKLYN OFFICE

CLASS ACTION COMPLAINT

AMON, J.

POLLAK, M.J.

Plaintiff, by and through his undersigned attorneys, alleges upon knowledge as to himself and his own acts, and as to all other matters upon information and belief, bring this complaint against the above-named defendant, its employees, agents, and successors, and in support thereof alleges the following:

PRELIMINARY STATEMENT

1. Plaintiff brings this action on his own behalf and on behalf of all others similarly situated for damages and declaratory and injunctive relief arising from the defendant's violation of §1692 *et seq.* of Title 15 of the United States Code, the Fair Debt Collections Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.



#0603 P.004 JUL.23.2002 13:25

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This is an action for violation of 15 U.S.C. § 1692.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff Nathan Katz (hereinafter "Katz") is a resident of the State of New York, County of Kings. On or about May 9, 2002, plaintiff received a debt collection notice from defendant at plaintiff's home address. Exhibit A.

5. Risk Management Alternatives, Inc. (hereinafter "RMA") is a Delaware foreign business corporation active in New York as a collection agency engaged in the business of collecting debts with its principal place of business located in Duluth, Georgia. The principal purpose of defendant RMA is the collection of debts using the mails and the defendant regularly attempts to collect debts alleged to be due another. Its New York City Department of Consumer Affairs collection agency license number is 1069252 licensing defendant at 4360 Northeast Expressway, Atlanta, Georgia. Its Registered Agent is CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

## CLASS ACTION ALLEGATIONS

6. Plaintiff brings this action as a nationwide class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of himself and all consumers who have received debt collection notices and/or letters from the defendant which are in violation of the FDCPA, as of the date of plaintiff's complaint, and their successors in interest

(the "Class"). Excluded from the Class is the defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with the defendant, including, without limitation, persons who are officers, directors, employees, associates or partners of RMA.

7. This action is properly maintained as a class action. This Class satisfies all the requirements of Rule 23 for maintaining a class action.

8. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, thousands of persons have received debt collection notices from the defendant which violate various provisions of the FDCPA.

9. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

a. Whether the defendant violated various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692g, 1692g(a)(3), 1692g(a)(4) and 1692e(10).

b. Whether plaintiff and the Class have been injured by the defendant's conduct;

c. Whether plaintiff and the Class have sustained damages and are entitled to restitution as a result of defendant's wrongdoing and, if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

d. Whether plaintiff and the Class are entitled to declaratory and/or injunctive relief.

10. Plaintiffs' claims are typical of the claims of the Class, and plaintiff has no interests adverse or antagonistic to the interests of other members of the Class.

11. Plaintiff will fairly and adequately protect the interests of the Class and have retained experienced counsel, competent in the prosecution of class action litigation.

12. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

13. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a class action the Class members will continue to suffer losses of statutorily protected rights as well as monetary damages and if defendant's conduct will proceed without remedy it will continue to reap and retain the proceeds of its ill-gotten gains.

14. Defendant has acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

STATEMENT OF FACTS

15. On or about May 9, 2002, defendant sent an initial collection letter to plaintiff, demanding payment of a debt allegedly owed to Bank of America. A copy of said letter is annexed hereto as **Exhibit A**.

16. The collection letter stated:

"If the above account has been paid, please disregard this notice."

17. Said directive to the consumer to disregard the notice contradicts and overshadows the consumer's requirement to dispute the debt, which functions to divest the consumer of his statutory protections which are preserved by communicating with the debt collector and are waived by disregarding the debt collector.

18. By virtue of the contradictory language, the letter fails to contain the entire 30 day notice required under the FDCPA.

19. As a result of defendant's abusive, deceptive and unfair debt collection practices, plaintiffs have been damaged.

**FIRST CAUSE OF ACTION**
(Violations of the FDCPA)

20. Each of the above allegations is incorporated herein.

21. Defendant's debt collection letter violated and overshadowed various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692g, 1692g(a)(3), 1692g(a)(4) and 1692e(10).

22. As a result of defendant's violation of the FDCPA, plaintiffs have been damaged and are entitled to statutory damages, costs and attorney's fees.

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment as follows:

a) Declaring that this action is properly maintainable as a class action and certifying plaintiff as Class representative;

b) Issue a preliminary and permanent injunction restraining defendant, its employees, agents and successors from, *inter alia*, engaging in conduct and practices that are in violation of the FDCPA;

c) Issue a declaratory Order requiring defendant to make corrective disclosures;

d) Awarding plaintiff statutory damages;

e) Awarding class members the maximum statutory damages;

f) Awarding plaintiff costs of this action, including reasonable attorneys' fees and expenses; and

g) Awarding plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the FRCP, plaintiff hereby demands a trial by jury.

Dated: July 11, 2002
Uniondale, New York

Lawrence Katz (LK-6062)
Abraham Kleinman (AK-6300)
Katz & Kleinman PLLC
165 EAB Plaza
Uniondale, New York 11556-0165
Telephone (516) 522-2621
Facsimile (516) 522-2890

**EXHIBIT A**

RMA

**RISK MANAGEMENT ALTERNATIVES, INC.**

4360 NORTHEAST EXPWY 52-H
ATLANTA, GA 30340

4360 NORTHEAST EXPRSWY 52-H
ATLANTA, GA 30340
800-455-3167

May 9, 2002

#S000004473 02 #T000000015
3214685 OUTRMS
KATZ, NATHAN
185 ROSS ST
BROOKLYN, NY 11211-7204

**Creditor: BANK OF AMERICA**
**Reference: 4888603252035357**
**Balance Due As Of: 05-02-02; $ 3168.53**

Our customer, BANK OF AMERICA, has asked us to contact you regarding your account indicated above. Their records indicate that your account is currently past due, and they are interested in trying to help you resolve this delinquency.

It is hard for BANK OF AMERICA to help you or resolve this issue without communication. If this delinquency persists, your account will continue to age and could affect your credit rating.

Please call us at 800-455-3167 to discuss this matter. We are anxious to assist you in overcoming this obstacle.

If the above account has been paid, please disregard this notice.

Sincerely,

800-455-3167

This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

(Please return this portion with your payment)

For: KATZ, NATHAN
References: 4888603252035357
Account Number: 3214685 -OUTRMS
Creditor: BANK OF AMERICA
Balance Due: $3168.53

New Address: ____________________
____________________
New Home #:( ) ____________________
New Work #:( ) ____________________

New York Department Of Consumer Affairs Permit# 1069252

RISK MANAGEMENT ALTERNATIVES, INC.
P.O. BOX 942405
ATLANTA, GA 31141-2405

105

See the reverse side of this request for the Federal Validation Notice and other required information.

FEDERAL FAIR DEBT COLLECTION PRACTICES ACT NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. We are required under certain State and Local Laws to notify consumers of those States or Localities of the following rights. This list does not contain a complete list of the rights consumers have under Federal, State, or Local Laws.

ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency. If you wish to discuss this matter, please call us direct, between the hours of 8 am and 5 pm EST, at the telephone number listed on the front of this notice. Local address - 5230 Washington Street, West Roxbury, MA 02132.

ADDITIONAL INFORMATION FOR COLORADO RESIDENTS

If you notify our agency in writing to cease contacting you by telephone at your residence or place of employment, no further contact shall be made. If you refuse to pay the debt or you wish our agency to cease further communication and you so advise our agency in writing, we shall not communicate further with you except: A. to advise you we intend to invoke specified remedies permitted by law or that we may invoke specified remedies which we ordinarily invoke; B. to advise you our efforts are being terminated. Collection agencies are licensed by the Collection Agency Board in the Department of Law, 1525 Sherman Street, 5th floor, Denver, Colorado 80203. Payments on the debt are not to be sent to the Board.

ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS

This collection agency is licensed by the Minnesota Department of Commerce.

ADDITIONAL INFORMATION FOR WISCONSIN RESIDENTS

This collection agency is licensed by the Office of the Administrator of the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS

This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

NOTICE FOR ALL CONSUMERS

Our staff is trained to conduct themselves in a businesslike and professional manner, and to leave you with a positive experience in dealing with our Company. Please call (800) 898-3068 with your criticisms, suggestions or compliments. To talk with us about the account, please call the number on the front of this letter. N6-T

**EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NATHAN KATZ, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

RISK MANAGEMENT ALTERNATIVES, INC.,

Defendant.

Case No. 02 CV 3977 (CBA) (CLP)

**DEFENDANT RISK MANAGEMENT ALTERNATIVES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

TO: Lawrence Katz, Esq.
Katz & Kleinman PLLC
165 EAB Plaza
Uniondale, NY 11556-0165

Pursuant to the Federal Rules of Civil Procedure and the Local Rules, defendant Risk Management Alternatives, Inc. ("RMA") responds to Plaintiff's First Set of Requests for Interrogatories, and Requests for Production of Documents (the "Discovery Requests") as follows:

**GENERAL OBJECTIONS**

1. RMA objects to the Discovery Requests to the extent that they call for information that is subject to the attorney-client privilege, the work product doctrine, or any other privilege. By providing any information, RMA does not waive any privilege and reserves the right to recall at any time any information supplied inadvertently to which any privilege is attached.

2. RMA objects to the Discovery Requests to the extent that they are overly broad and call for information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

3. Production of any document or material as to which a privilege could be asserted shall not constitute a waiver of any claim of privilege RMA may have as to any other document or material.

4. RMA's responses are based upon information presently available to RMA. RMA reserves the right to supplement, amend or correct any and all responses and objections.

5. RMA objects to each Discovery Request as unduly burdensome and oppressive to the extent that: (a) the information sought is already in the possession of plaintiff; (b) the information sought is obtainable with less burden or expense from another source; and/or (c) the information sought by the Discovery Requests can only or more appropriately be obtained by other discovery methods.

6. RMA objects to plaintiff's Definitions and Instructions to the extent that they seek to impose obligations not found in the Federal Rules of Civil Procedure or Local Rules.

7. By providing information in response to the Discovery Requests, RMA does not concede that such information is relevant to the subject matter involved in the pending action or the claims or defenses of any party herein, or that such documents or information are reasonably calculated to lead to the discovery of admissible evidence. RMA expressly reserves the right to object to the use of any information provided in response to the Discovery Requests on grounds of relevance or for any other reason.

8. RMA objects to the Discovery Requests to the extent that they seek confidential, proprietary or trade secret information. Such documents will be produced subject to the entry of a Consent Protective Order containing mutually agreeable terms.

Subject to and without waiving the foregoing objections, RMA responds as follows:

## INTERROGATORIES

**1. State by year the number of persons who (a) were sent, between July 12, 2001 and the present, initial contact letters which included language: If the above account has been paid, please disregard this notice and (b) which indicated on the front of the letter: See the reverse side of this request for the Federal Validation Notice and other required information, and (c) contained the 30 day validation notice on the reverse side of the letter and (d) allegedly owed money in connection with debts shown by defendant's records to be consumer debts. Identify each such person.**

Response:

RMA objects to Interrogatory No. 1 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA also objects to the request for information concerning "consumer debts" on the grounds that the term is undefined, vague and ambiguous. RMA further objects to the request for information concerning "consumer debts" on the grounds that it calls for a legal conclusion, and seeks information subject to the attorney-client privilege or attorney work product doctrine. RMA also objects to the request for the names and addresses of each such person as unduly burdensome, oppressive and harassing. RMA also objects to the request for the names and addresses of each such person on the grounds that it seeks confidential information.

Subject to and without waiving the foregoing objections, RMA states that a total of 1,254,255 letters were sent by RMA from July 12, 2001 through September 1, 2002 which: (a) stated "If the above account has been paid, please disregard this notice"; (b) which indicated on the front of the letter "See the reverse side of this request for the Federal Validation Notice and other required information"; and (c) which contained a 30 day validation notice on the reverse side of the letter. Of those letters, 333,796 were returned to RMA as undeliverable. RMA further states that letters containing all of the foregoing language were not sent after September 1, 2002.

RMA has no knowledge concerning the nature of the debts that were the subject of the letters sent by RMA, which have been identified in its answer to this Interrogatory. RMA further states that the names of the individuals who received letters from RMA will not be supplied unless or until an Order is entered by the Court certifying a class.

**2. With respect to each expert whom you will call or may call upon to give evidence in connection with this case, please state: (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; (c) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.**

<u>Response</u>:

In addition to its General Objections, RMA objects to Interrogatory No. 2 on the grounds that it seeks information subject to the attorney-client privilege or work product doctrine. Specifically, RMA objects to the request for information concerning experts whom "may" be called at the time of trial as protected by the work product doctrine. RMA also objects to the Interrogatory as overly broad, and to the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, RMA states that it has not yet identified expert witnesses who are expected to testify at the time of trial. If such experts are identified, responsive information will be supplied within the time and in the manner required by the Federal Rules of Civil Procedure and the Scheduling Orders of the Court.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**1. All documents which discuss, describe or set forth standards, criteria, guidelines, policies or practices relating to compliance with the Fair Debt Collection Practices Act, or state statute regulating debt collectors.**

Response:

In addition to its General Objections, RMA objects to Request No. 1 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. In particular, RMA objects to the request for all documents which "discuss, describe or set forth standards" as overly broad, and on the grounds that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine. RMA also objects to Request No. 1 on the grounds that it seeks confidential and proprietary information.

Subject to and without waiving the foregoing objections, RMA states that the following documents will be produced subject to the entry of a Consent Protective Order containing mutually agreeable terms: (a) RMA's Federal Fair Debt Collection Practices Act Overview; (b) RMA's State Restrictions Summary; (c) RMA's Final Assessment Questionnaire; and (d) RMA's Policy and Procedure Manual.

**2. All documents relating to any complaint, criticism or inquiry, by any person, concerning defendants' compliance with the Fair Debt Collection Practices Act, or state statutes regulating debt collection activities, or collection practices generally.**

Response:

In addition to its General Objections, RMA objects to Request No. 2 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request on the grounds that it seeks information that is neither relevant nor

reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request for information concerning "criticisms" or "inquiries" as undefined, overly broad, vague and ambiguous. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, RMA states that there have been no complaints filed with any court, by any person, based upon letters containing language identical to that contained in Exhibit A to the Complaint, which language was identified by plaintiff as being actionable under the FDCPA.

**3. One copy of each different form letter defendant sent to debtors.**

Response:

In addition to its General Objections, RMA objects to Request No. 3 on the grounds that the request for all letters sent by RMA at any time is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to Request No. 3 as overly broad in that it is unlimited as to time. RMA also objects to Request No. 3 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, RMA states that its response will be limited to letters sent by RMA from July 12, 2001 through September 1, 2002 which contained the following language: (a) "If the above account has been paid, please disregard this notice"; (b) "See the reverse side of this request for the Federal Validation Notice and other required information"; and (c) a 30 day validation notice on the reverse side of the letter. Subject to the foregoing limitation, RMA states: in addition to Exhibit A to the Complaint (the old version of letter N6-T), RMA believes that letters numbered 1710, PSNET1-T and JTCL18-T also contained

the foregoing language until September 1, 2002. However, RMA has no copies of letters 1710, PSNET1-T and JTCL18-T in the form that existed between July 12, 2001 and September 1, 2002.

**4. All manuals, policy statements, guidelines and instructional materials furnished to employees that relate to conduct of collection activities by the defendant.**

Response:

*See* response and objections to Request No. 1.

**5. All documents relating to the maintenance by defendant of procedures adapted to avoid any violation of the Fair Debt Collection Practices Act.**

Response:

*See* response and objections to Request No. 1.

**6. Defendant's annual financial statements, annual reports, semiannual and quarterly financial statements and tax returns for the last three years.**

Response:

In addition to its General Objections, RMA objects to Request No. 6 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request as overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request to the extent that it seeks confidential or proprietary information of RMA.

Subject to and without waiving the foregoing objections, RMA states that plaintiff is not entitled to any damages, let alone the maximum statutory award. Subject to the foregoing statement, RMA stipulates that the maximum statutory damages that plaintiff can hope to recover on behalf of a certified class, based upon RMA's net worth and the FDCPA statutory guidelines, is $500,000. RMA's stipulation obviates the need to produce information responsive to the

Request.

**7. All documents relating to any judicial or administrative proceeding (irrespective of date) in which defendants were accused of violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.**

Response:

In addition to its General Objections, RMA objects to Request No. 7 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request for information concerning allegations of "committing a tort" as undefined, overly broad, vague and ambiguous. RMA further objects to Request No. 7 on the grounds that it is unlimited as to time. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objections, RMA states that it has not been involved in any judicial or administrative proceedings in which RMA was accused of having violated any state or federal statute based upon letters containing language identical to that contained in Exhibit A to the Complaint, which language was identified by plaintiff as being actionable under the FDCPA.

**8. All documents (irrespective of date) relating to any claim made against defendant for violating the Fair Debt Collection Practices Act, any state statute regulating collection practices, or of committing a tort while engaging in collection activities.**

Response:

*See* response and objections to Request Nos. 2 and 7.

**9. All insurance policies that may afford coverage with respect to the matters complained of.**

Response:

Subject to and without waiving its General Objections, RMA states that responsive documents will be produced subject to the entry of a Consent Protective Order.

**10. The agreement(s) pursuant to which defendant sought to collect money from plaintiff.**

Response:

In addition to its General Objections, RMA objects to Request No. 10 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request on the grounds that it seeks confidential or proprietary information.

Subject to and without waiving the foregoing objections, RMA states that documents, limited to the portion of RMA's contract with Bank of America which authorized RMA to engage in collection efforts on behalf of Bank of America, will be produced subject to entry of a Consent Protective Order containing mutually agreeable terms, and subject to Bank of America's approval of such disclosure.

**11. All documents (irrespective of date) which constitute or reflect communications between defendants and any Attorney General's office or other law enforcement, consumer protection or regulatory agency, relating to collection activities of defendant.**

Response:

In addition to its General Objections, RMA objects to Request No. 11 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the

request for documents concerning RMA's communications with "other law enforcement, consumer protection or regulatory agency" as undefined, vague and ambiguous. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine. RMA further objects to Request No. 11 as overly broad in that it is unlimited as to time.

Subject to and without waiving the foregoing objections, RMA states that it has not been involved in communications with any Attorney General's office based upon complaints or investigations concerning letters containing language identical to that contained in Exhibit A to the Complaint, which language was identified by plaintiff as being actionable under the FDCPA.

**12. All documents (irrespective of date) which constitute or reflect communications between defendant and private agencies that receive consumer complaints (such as a Better Business Bureau or newspaper column), relating to collection activities of defendant.**

Response:

In addition to its General Objections, RMA objects to Request No. 12 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request for documents concerning RMA's communications with "private agencies" as undefined, vague and ambiguous. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine. RMA further objects to Request No. 12 as overly broad in that it is unlimited as to time.

Subject to and without waiving the foregoing objections, RMA states that it has

not been involved in communications with the Better Business Bureau or newspaper publications based upon complaints or investigations concerning letters containing language identical to that contained in Exhibit A to the Complaint, which language was identified by plaintiff as being actionable under the FDCPA.

**13. All documents (irrespective of date) that discuss defendant's compliance or lack of compliance with the Fair Debt Collection Practices Act.**

Response:

In addition to its General Objections, RMA objects to Request No. 13 on the grounds that it is overly broad, unduly burdensome, oppressive and harassing. RMA further objects to the Request on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine. RMA further objects to Request No. 13 as overly broad in that it is unlimited as to time.

**14. All documents transmitted to plaintiff by defendant with respect to the alleged debt of plaintiff.**

Response:

In addition to its General Objections, RMA objects to Request No. 14 as overly broad in that it fails to identify the debt to which the request refers. Subject to and without waiving the foregoing objections, and to the extent that the Request seeks communications from RMA to the plaintiff concerning the Bank of America Account identified in the letter annexed as Exhibit A to the Complaint, RMA states that it has no documents responsive to the Request.

**15. All documents relating to plaintiff, or which are indexed, filed or retrievable under his name or any number, symbol, designation or code (such as an account number or Social Security number) assigned to him or his transaction.**

<u>Response</u>:

In addition to its General Objections, RMA objects to Request No. 15 as overly broad, unduly burdensome, oppressive and harassing. RMA also objects to the request to the extent that it seeks information concerning other accounts that are not the subject matter of this action on the grounds that such information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. RMA also objects to the request to the extent that it seeks information subject to the attorney-client privilege or work product doctrine. RMA also objects to the request on the grounds that it seek confidential of proprietary information.

Subject to and without waiving the foregoing objections, RMA states that documents, including RMA's account notes concerning plaintiff's Bank of America account, and account notes concerning plaintiff's AT&T account, will be produced subject to the entry of a Consent Protective Order containing mutually agreeable terms.

As to the foregoing objections,

PITNEY, HARDIN, KIPP & SZUCH LLP
P.O. Box 1945
Morristown, New Jersey 07962-1945
(973) 966-6300
Attorneys for Defendant
Risk Management Alternatives, Inc.

BY: ______________________
LISA MARTINEZ WOLMART
A Member of the Firm

Dated: March 8, 2004